UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LANAE HOUCHENS,

                 Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

                 Defendant.

Case No. 3:15-cv-05022-KLS

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of defendant's denial of her application for supplemental security income ("SSI") benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny benefits should be reversed and this matter should be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On November 16, 2011, plaintiff filed an application for SSI benefits, alleging disability as of February 1, 2010. *See* Dkt. 13, Administrative Record ("AR") 99. This application was

ORDER - 1

denied upon initial administrative review on February 7, 2012, and on reconsideration on May 31, 2012. *See id.* A hearing was held before an administrative law judge ("ALJ") on July 25, 2012, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. *See* AR 124-153.

In a decision dated July 18, 2013, the ALJ determined plaintiff to be not disabled. *See* AR 96-116. The Appeals Council then considered additional evidence submitted by plaintiff, but plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on November 14, 2014, making that decision the final decision of the Commissioner of Social Security (the "Commissioner"). *See* AR 1-7; 20 C.F.R. § 416.1481. On January 16, 2015, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. *See* Dkt. 3. The administrative record was filed with the Court on April 3, 2015. *See* Dkt. 13. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision to deny benefits should be reversed and remanded for an award of benefits, or alternatively for further administrative proceedings, because the Commissioner erred: (1) in evaluating the medical evidence in the record, including the opinion of Janis L. Lewis, Ph.D., which was submitted for the first time to the Appeals Council; (2) in using plaintiff's credibility as a relevant factor in determining disability; (3) in assessing plaintiff's residual functional capacity ("RFC"); and (4) in finding plaintiff to be capable of performing other jobs existing in significant numbers in the national economy. For the reasons set forth below, the undersigned agrees the ALJ's decision is not supported by substantial evidence in light of Dr. Lewis's opinion. Also for the reasons set forth below, however, the undersigned recommends that while defendant's decision to deny benefits should be reversed on

ORDER - 2

this basis, this matter should be remanded for further administrative proceedings.

## DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Commissioner of Social Security Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).[1]

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by

ORDER - 3

I. <u>The Additional Medical Evidence Submitted to the Appeals Council</u>

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." *Morgan v. Commissioner of the Social Security Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can

---

substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

*Sorenson*, 514 F.2d at 1119 n.10.

ORDER - 4

only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *See Lester*, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson*, 359 F.3d at 1195; *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

In late September 2013, Dr. Lewis completed a psychological evaluation report, as well as a medical source statement and psychiatric technique review form. *See* AR 52-81. She diagnosed plaintiff with posttraumatic stress disorder, panic disorder with agoraphobia, generalized anxiety disorder, and borderline personality disorder. *See* AR 81. Dr. Lewis opined that plaintiff had moderate limitations in activities of daily living and marked difficulties in maintaining social functioning and concentration, persistence, or pace. *See* AR 63. Specifically, Dr. Lewis found plaintiff would be precluded from performing several functions for 20% of an eight-hour workday, including the ability to perform activities within a schedule, maintain

ORDER - 5

regular attendance, be punctual within customary tolerances, and accept instructions and respond appropriately to criticism from supervisors. *See* AR 69-70. Ultimately, Dr. Lewis opined that plaintiff would miss four days of work per month on average because of her anxiety and that she would be "off task" 30% of a normal workday. *See* AR 71.

Many of the limitations Dr. Lewis found are not included in the mental RFC[2] the ALJ assessed, which restricted plaintiff to performing work that is low-stress, which the ALJ defined as consisting of simple, routine tasks requiring the exercise of no more than rudimentary judgment, no interaction with the public, no more than occasional changes in the work setting or processes, and no more than occasional, superficial interaction with coworkers. *See* AR 104.The Appeals Council determined that the medical evidence from Dr. Lewis did not affect the ALJ's decision because the information concerned the period after that decision was issued. *See* AR 2. This statement is factually incorrect, though, as Dr. Lewis clearly indicated plaintiff's limitations had existed at the level she assessed since February 1, 2010. *See* AR 70.

Plaintiff argues the Appeals Council committed reversible error by rejecting the opinion of Dr. Lewis without specific and legitimate reasons for doing so. *See* Dkt. 15, pp. 8-9. This Court, however, lacks jurisdiction to review the Appeals Council's denial of plaintiff's request for review. *See Mathews v. Apfel*, 239 F.3d 589, 594 (3rd Cir. 2001) (noting no statutory authority, source of district court's authority to review, authorizes district court to review Appeals Council decisions to deny review). This is because "[w]hen the Appeals Council denies

---

[2] The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. *See id.* If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2. A claimant's RFC assessment is used at step four of the sequential disability evaluation process to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. *See id.*

ORDER - 6

a request for review, it is a non-final agency action not subject to judicial review," and "the ALJ's decision becomes the final decision of [defendant]." *Taylor v. Commissioner of Social Security Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011). The Court, therefore, "may neither affirm nor reverse the Appeals Council's decision." *Id.*

Moreover, the Appeals Council is "'not required to make any particular evidentiary finding' when it reject[s] evidence . . . obtained after an adverse administrative decision." *Id.* at 1232 (*quoting Gomez v. Chater*, 74 F.3d 967, 972 (9th Cir. 1996)). As such, other than noting it considered the new evidence, the Appeals Council did not have to give specific attention to, or provide legally sufficient reasons for rejecting, that evidence. *See* 20 C.F.R. § 404.970(b) (requiring that Appeals Council only "*consider*" any "new and material evidence" submitted to it, where it "relates to the period on or before the date of the [ALJ's] hearing decision," and "*evaluate* the entire record including the new and material evidence" and "*review* the case if it finds that the [ALJ]'s action, findings, or conclusion is contrary to the weight of the evidence currently of record.") (emphasis added).

"When the Appeals Council declines review," therefore, "'the ALJ's decision becomes the final decision of the Commissioner," and the Court "reviews that decision for substantial evidence, based on the record as a whole," which "includes [new] evidence submitted to and considered by the Appeals Council." *Brewes v. Commissioner of Social Security Admin.*, 682 F.3d 1157, 1161-62 (9th Cir. 2012). Dr. Lewis's opinion constitutes such new evidence, and therefore the Court must consider it in determining whether the Commissioner's final decision is supported by substantial evidence. *See id.* at 1163.

Defendant first argues this new evidence does not undermine the ALJ's decision because it was obtained only after the ALJ issued a determination adverse to plaintiff, and thus it is less

ORDER - 7

persuasive on that basis. In so arguing, defendant cites *Key v. Heckler*, 754 F.2d 1545 (9th Cir. 1985), and *Clem v. Sullivan*, 894 F.2d 328 (9th Cir. 1990). Specifically, defendant points to the Ninth Circuit's statement in *Key* that "[t]he obvious explanation" as to why the claimant did not solicit medical opinion evidence submitted after the ALJ had issued an adverse decision earlier, was because when he "failed to succeed on his disability claim in the agency and district court hearings, he sought out a new expert witness who might better support his position." 754 F.2d at 1551. The Ninth Circuit went on to comment further that "if such circumstances were sufficient to allow introduction of new evidence," then "[t]he 'good cause' requirement would 'be meaningless.'" *Id.* (quoting *Allen v. Secretary of Health and Human Services*, 726 F.2d 1470, 1473 (9th Cir.1984)).

As just indicated, however, in both *Key* – as a well as in *Clem* – the new evidence at issue was submitted only after the underlying administrative proceedings had concluded, including after the Appeals Council already had denied review. *See id.*; *see also* 894 F.2d at 332. But as also just indicated, when a claimant seeks to submit new evidence for the first time to the Court, a showing of good cause for failing to submit it for consideration in the prior administrative proceedings must be made. *See Clem*, 894 F.2d at 832 ("A claimant does not meet the good cause requirement simply by obtaining a more favorable report from an expert witness once his claim is denied."); *see also Key*, 754 F.2d at 1551 ("If new information surfaces after the [Commissioner]'s final decision and the claimant could not have obtained that evidence at the time of the administrative proceeding, the good cause requirement is satisfied.").

In *Key*, furthermore, the claimant also had submitted medical opinion evidence for the first time to the Appeals Council, which the Ninth Circuit explicitly considered in determining whether the Commissioner's final decision was supported by substantial evidence without first

ORDER - 8

requiring the claimant to establish good cause for not having submitted that evidence earlier, or even indicating that such a showing was required. *See* 754 F.2d at 1550. Nor did the Court of Appeals take issue with the after-the-fact nature of the opinion evidence or otherwise indicate that was a basis for discounting its credibility. *See id.* In *Brewes* the Ninth Circuit expressly held that a claimant "need not show 'good cause' before submitting new evidence to the Appeals Council."[3] 682 F.3d at 1162. Indeed, the Court of Appeals considered and remanded the case on the basis of the additional opinion evidence precisely because it "was directly responsive" to the vocational expert's testimony at the hearing before the ALJ, thereby indicating that the claimant may in fact not be employable. *See id.* at 1163-64.

It is true that in *Weetman v. Sullivan*, 877 F.2d 20, 23 (9th Cir. 1989), the Ninth Circuit found the additional medical opinion evidence the claimant submitted to the Appeals Council was "all the less persuasive because it was obtained by [the claimant] only after the ALJ issued an adverse determination." But the main reason the Court of Appeals appears to have rejected the claimant's request for reversal and remand based on that evidence was because the new opinion evidence was "clearly inconsistent" with the opining medical source's prior medical notes, and thus the after-the-fact nature of the opinion seems to have provided an additional reason for not finding it warranted granting the claimant's request. *Id.* As such, while the fact that medical opinion evidence is submitted after an adverse ALJ decision has been issued is a factor that *can* be taken into consideration in weighing its credibility, that fact alone does not necessarily call the adverse decision into question and certainly it is not determinative.

---

[3] Defendant points out that in *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001), the Ninth Circuit held that to "justify a remand" in that case, the claimant was required to demonstrate good cause for having failed to produce the evidence submitted to the Appeals Council earlier. But this is because the claimant in *Mayes* had conceded that the good cause requirement applied to such evidence. *See id.* at 461 n.3. Indeed, the Court of Appeals expressly noted it "need not decide whether good cause is required for submission of new evidence to the Appeals Council" because of that concession. *Id. Mayes* thus does not address, let alone resolve, that issue.

ORDER - 9

The Court finds this case to be much more analogous to the situation in *Brewes* than that in *Weetman*. Here, the ALJ gave great weight to the opinions of state agency consultants John Gilbert, Ph.D., and John Robinson, Ph.D. (*see* AR 108), who found plaintiff to be moderately limited in a number of mental functional areas, including in her ability to carry out detailed instructions, maintain attention and concentration, perform activities within a schedule, maintain regular attendance, be punctual, interact appropriately with the general public, and get along with coworkers (*see* AR 163-64, 178-79). Drs. Gilbert and Robinson further opined that plaintiff would have some difficulty in regard to sustained work activity, could generally maintain adequate concentration, persistence and pace, and could respond appropriately to supervisors and to superficial contact with coworkers. *See id.*

On the other hand, the ALJ gave only limited weight to examining psychologist Terrilee Wingate, Ph.D., who opined that plaintiff's anxiety and anger would greatly impact her ability to work with a supervisor and that she had significant difficulty attending to routine tasks on a sustained basis or tolerating the stress of competitive employment. *See* AR 108-09, 509. The ALJ incorporated parts of Dr. Wingate's opinion into his RFC assessment, but regarding the ability to tolerate the stress of employment, the ALJ stated Dr. Wingate's opinion was based partly on plaintiff's complaints, which lacked credibility. *See* AR 108. Regarding plaintiff's difficulty working with a supervisor, the ALJ found that issue was adequately accommodated by the RFC assessment, and discounted Dr. Wingate's opinion with respect thereto because plaintiff's assertions of anxiety and anger appeared to be "inconsistently stated and overstated." AR 109. The ALJ also gave only limited weight to treating provider Natalie Harrah, M.A., M.H.P. – who opined that plaintiff would likely have inappropriate responses to supervisors and significant problems with decision-making – because Ms. Harrah had "no direct knowledge of

how [plaintiff's] symptoms would affect her ability to perform specific work tasks. AR 109, 579-80.

The Court finds that in light of Dr. Lewis's opinion, it cannot clearly be said that the ALJ's decision would remain unchanged. This is because the reasons the ALJ offered for giving only limited weight to the above treating and examining medical sources in the record do not apply to the opinion of Dr. Lewis. That is, Dr. Lewis's opinion was not based primarily on plaintiff's subjective complaints. Nor was Dr. Lewis lacking direct knowledge of how plaintiff's symptoms would affect her work functioning. Dr. Lewis reviewed all the major records from the case, conducted a background interview, and administered both a Mental Status Examination and a Personality Assessment Inventory ("PAI"). *See* AR 74-75. For example, she found plaintiff's unvarying posture and facial expression were consistent with psychic numbing, and referenced treatment notes showing that despite plaintiff's strong effort to follow treatment plans, she had a "very low threshold to tolerate the increased stress." AR 78-79. Although a PAI is based on a patient's self-reports, Dr. Lewis found plaintiff's results to be consistent with her clinical history, indicating considerable anxiety, hostility, social withdrawal, and generally a "cry for help." AR 80-81. Dr. Lewis, furthermore, specifically opined as to how plaintiff's limitations would affect a variety of work tasks. *See* AR 68-71.

Dr. Lewis's opinion thus bolsters the portions of both Dr. Wingate's and Ms. Harrah's opinions indicating greater mental functional limitations than adopted by the ALJ in his RFC assessment, leaving only the state agency medical consultants to support the ALJ's findings. As noted above, though, the opinions of those medical sources who treat and examine a claimant are generally given more weight than those from medical sources who do not do so. *See Lester*, 81 F.3d at 830-31. Therefore, examining the record as a whole, it cannot be said with certainty that

ORDER - 11

the ALJ's disability determination is still supported by substantial evidence.

II.     This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." *Smolen*, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." *Id.*

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292; *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to plaintiff's RFC and thus her ability to perform other jobs existing in significant numbers in the national economy[4] in light of Dr. Lewis's opinion, remand for further consideration of both that opinion and those issues are warranted.

---

[4] If a claimant cannot perform his or her past relevant work at step four of the sequential disability evaluation process, at step five thereof the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. *See Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e). The ALJ can do this either through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000); *Tackett*, 180 F.3d at 1100-1101. An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ to the vocational expert. *See Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. *See Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly,

ORDER - 12

## CONCLUSION

Based on the foregoing discussion, the Court hereby finds the ALJ improperly concluded plaintiff was not disabled. Accordingly, defendant's decision to deny benefits is REVERSED and this matter is REMANDED for further administrative proceedings in accordance with the findings contained herein.

DATED this 20th day of July, 2015.

Karen L. Strombom
United States Magistrate Judge

---

the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." *Id.* (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ in this case found plaintiff to be capable of performing other jobs existing in significant numbers based on the testimony of the vocational expert offered in response to a hypothetical question, which in turn was based on the ALJ's RFC assessment. *See* AR 111. However, because as discussed above, that RFC assessment has been called into question in light of Dr. Lewis's opinion, the hypothetical question – and thus the vocational expert's testimony and the ALJ's step five determination – cannot be said to be supported by substantial evidence.

ORDER - 13